COLDRON *v.* RHODE, Administrator.

7 | 151
128 | 515

Suit by an administrator, before a justice of the peace, under the R. S. 1843, upon a note given to his intestate. The suit was commenced by *capias,* to obtain which the plaintiff filed with the justice an affidavit, in which the note was set out and the plaintiff's representative character fully described. *Held,* that the cause of action filed was sufficient, and that the filing of the note itself was unnecessary.

Under the statute of 1838, the title to personal as well as real property vested in the heir on the death of the ancestor, subject to be divested instantly on the appointment of a personal representative.

Suit, before a justice of the peace, while the R. S. 1843 were in force, against one of several makers of a joint note. It was shown that the other makers were out of the state. *Held,* that they were not necessary parties.

A. died, about 1841, leaving five children, all adults, and owing no debts. He requested his children to divide his estate (which consisted chiefly of notes for money lent) among themselves, without administration, which they did, by agreement between them in writing. B. being indebted by note to the intestate, took up this note, which had been assigned, in the division, to C., one of the heirs, and gave a note directly to C. in its stead. C. having died, his administrator, about eight years after his death, sued B. upon the note. B., when he gave the note, knew all the facts. There was no pretence of concealment or false representation, nor any suggestion that B. was likely to suffer loss by being compelled to pay the note. *Held,* that B. was liable to pay the note.

A note was given in *March,* 1842, drawing eight per cent. interest, in substitution for a former note. *Held,* that the note was usurious.

APPEAL from the *Warren* Circuit Court.

GOOKINS, J.—*Seymour T. Rhode,* administrator of *Jonathan Rhode,* sued *Coldron,* before a justice of the peace, on a promissory note payable to his intestate. The justice gave judgment for the plaintiff, from which the defendant appealed to the Circuit Court, where the plaintiff also recovered. Motion for a new trial overruled, and judgment.

It is objected that no cause of action was filed before the justice of the peace; and that no *sufficient* cause of action was filed, &c. The transcript from the Circuit Court does not contain the note, (except as recited in the justice's transcript and in the bill of exceptions,) and the appellant relies upon the case of *Bell* v. *Trotter,* 4 Blackf. 12, on the first point, and upon the cases of *Vandagrift* v. *Tate, id.*

174, and *Hamilton* v. *Ewing*, 6 *id.* 88, on the other.  The first of these cases decides that the transcript from the Circuit Court must show that a cause of action had been filed before the justice, and the other two cases decide that a note sued on by one not appearing to be a party to it, is not a sufficient cause of action, without an averment showing the plaintiff's right to sue, as in the case of an administrator suing on a note given to his intestate.  Neither of these objections is well taken in the present instance.  The suit was commenced by a *capias*, to obtain which the plaintiff filed with the justice an affidavit, in which the note is set out, and his representative character fully described.  On general demurrer, it would have been sufficient as a declaration in a Court of record, and it should be so regarded.  The plaintiff was not bound to file his note; he might retain it, and offer it in evidence at the trial.

The defences were want of consideration and usury.

It appeared in evidence that one *John Rhode*, father of the intestate, died about 1841, leaving five children, and owing no debts; that he requested his children to divide his estate among themselves, without administration, they being all of age, which they did by an agreement in writing.  It consisted chiefly of notes for lent money, among which was one against *John* and *Levi Jennings* and *Coldron*, which was assigned to *Jonathan* in the division. *Jonathan* was, at the time, in *Arkansas*, and his share was taken by the present plaintiff, who surrendered the note payable to *John Rhode*, and took the note now sued on for it.  When *Jonathan* came home, he ratified what had been done.  *Jonathan* had been dead about eight years, and the plaintiff was his administrator.

The appellant's position is, that this evidence shows an unlawful intermeddling with the estate of *John Rhode;* that the debt to his estate is still in force, and the note sued on without consideration.

At the time of this transaction, the statute of descents and distribution provided that the real and personal property of any person dying intestate should descend to his

children, &c.   R. S. 1838, p. 236, sec. 1.   Under that stat-
ute, the title to personal as well as real property vested in
the heir, on the death of the ancestor, subject to be divest-
ed instantly on the appointment of a personal representa-
tive.   No such was ever appointed.   It is proved that there
were no debts to be paid.   We should be slow to permit
the heirs, at an early period, to distribute the estate among
themselves, and should lend a ready ear to the complaint
of a creditor against the heir; yet where so long a time
has elapsed as in this case; where the original note was
surrendered and a new one given with a full knowledge of
all the facts, and without any pretence of concealment or
false representation, or any suggestion that the party is
likely to lose, we think it would be going too far to say
that the note was absolutely void.   The heir, it is true, had
a right to administer, and so had the debtor, if he thought
it necessary to his protection.   Had he done so, it would
have been an end of this case; but instead of doing so, he
gave his note, knowing all the facts; and we think he is
bound to pay it.

The defence of usury ought to have been sustained.
The note is as follows:

"Due *Jonathan Rhode* one hundred and eight dollars
and sixty-six cents, for value received, to be paid in specie,
and draw eight per cent., and to be paid yearly in specie.
*March* 31, 1842.   *John Jennings, Levi Jennings, William
Coldron.*"

The 8th section of the act of 1842, p. 91, which was in
force from its passage, and was approved *January* 31, 1842,
restricts the rate of interest to six per cent.   The case of
*Justice* v. *Charles*, 1 Ind. R. 32, is like the present.   A note
was surrendered and a new note taken on the 2d day of
*February*, 1842, only two days after that act took effect,
drawing ten per cent. interest.   It is indeed probable that
in both these cases, the parties contracted in ignorance of
the law, and we should be disposed to hold this contract
untainted with usury, if it were not for the danger that
might result from any relaxation of the rule, that every one
is presumed to know the law.

Nov. Term,
1855.

There is nothing in the objection taken by the appellant that all the parties were not sued. The action was brought before the R. S. of 1852 were in force; and besides, it is proved that *John* and *Levi Jennings* were out of the state. That defence was matter in abatement, and such a plea would not have been good, had it not alleged that the other parties were within the jurisdiction of the Court.

The appellee having offered to remit so much of the judgment as is affected by the usury, the judgment below will be affirmed for the sum of 81 dollars and 78 cents.

*Per Curiam.*—The judgment, except as to 81 dollars and 78 cents, is reversed with costs. The residue of the judgment is affirmed.

*R. A. Chandler*, for the appellant.

*B. F. Gregory*, for the appellee.